UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAFAEL ALVARDO HERRERA,

                Petitioner,

vs.                             Case No.  2:07-cv-469-FtM-29SPC

TIMOTHY  CANNON  and  FLORIDA
ATTORNEY GENERAL,

                Respondents.

_____

## OPINION AND ORDER

### I. Status

Petitioner Rafael Alvardo Herrera (hereinafter "Herrera" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on July 24, 2007[1] challenging his conviction, after jury trial, for Aggravated Battery of a Pregnant Victim arising out of the Twentieth Judicial Circuit in Collier County, Florida (Case number 01-2026CFA).  Petition at 1.[2]  The Petition sets forth the following two grounds for relief:

    1.    Trial counsel was ineffective in not contesting non-
          confrontational hearsay testimony; and,

---

[1]The Petition (Doc. #1) was docketed and filed in this Court on July 27, 2007.  The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."  Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

2.  Appellate counsel was ineffective in not raising the
        <u>Crawford v. Washington</u>[3] issue.

<u>Id.</u> at 5, 14.  Petitioner filed a Memorandum of Law in support of

his Petition (Doc. #2, Pet. Memorandum).  Respondent, the Secretary

of the Florida Department of Corrections,[4] filed a Response (Doc.

#14, Response), and supporting exhibits (Exhs. 1-15), including the

four volume record on appeal.  <u>See</u> Doc. #16, List of Exhibits

(exhibits not scanned).  Thereafter, Petitioner filed an Answer to

Response (Doc. #21).  This matter is ripe for review.

## II.  Procedural History

On September 4, 2001, the State filed an Information charging

Herrera with Aggravated Battery of a Pregnant Victim, Fla. Stat. §

784.045.  Exh. 15, Vol. I at 16-17.  On February 4, 2003, an

---

[3]<u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

[4]Respondent seeks dismissal of the Attorney General as a named
party respondent.  Response at 1, n.1.  Rule 2(a) of the Rules
Governing Section 2254 Cases in United States District Courts
(hereinafter the "Rules") provides that applicants in "present
custody" seeking habeas relief should name "the state officer
having custody of the applicant as respondent."  The Supreme Court
has made clear that there "is generally only one proper respondent
to a given prisoner's habeas petition."  <u>Rumsfield v. Padilla</u>, 124
S. Ct. 2711, 2717 (2004).  This is "'the person with the ability to
produce the prisoner's body before the habeas court.'"  <u>Id.</u>  When
the petitioner is incarcerated and challenges his present physical
confinement "the proper respondent is the warden of the facility
where the prisoner is being held, not the attorney general or some
other remote supervisory official."  <u>Id.</u> at 2718 (citations to
other authorities omitted).  In Florida, that person is the
Secretary of the Florida Department of Corrections.  Thus, the
Court will dismiss the Florida Attorney General as a named party
respondent.

Amended Information was filed alleging, in the alternative, that Herrera caused great bodily harm, permanent disability or permanent disfigurement. Id. at 25-26.

Herrera proceeded to a jury trial on February 5, 2003. Exh. 15, Vol. III. The jury returned a verdict of guilty of aggravated battery of a pregnant person as charged. Id. at 201-202. On March 14, 2003, the court sentenced Herrera to thirty years (30) years imprisonment as a career criminal. Exh. 15, Vol. I at 92-112. Herrera, represented by the Assistant Public Defender, raised one issue on direct appeal.[5] Exh. 1. After a response by the State (Exh. 2), the appellate court per curiam affirmed Herrera's conviction and sentence on September 3, 2004. Herrera v. State, 884 So. 2d 31 (Fla. 2d DCA 2004); Exh. 3.

On December 5, 2004, Herrera filed a State petition for writ of a habeas corpus alleging that appellate counsel was ineffective for failing to raise the Crawford v. Washington issue, the second ground for relief raised in the instant Petition. Exh. 5. The State filed a response. Exh. 6. On May 11, 2005, the State appellate court denied the petition without a written opinion. Herrera v. State, 902 So. 2d 802 (Fla. 2d DCA 2005); Exh. 7.

On July 31, 2015, Herrera filed a pro se motion pursuant to Florida Rule of Criminal Procedure 3.850 in which he claimed, as

---

[5]The Court will not address the issue raised on direct appeal or issues raised in Herrera's other post-conviction motions that are not raised in the instant Petition.

his third ground[6] for relief, that trial counsel was ineffective
for failing to object to the use of non-confrontational hearsay
testimony in violation of Petitioner's Sixth Amendment right (the
first ground for relief in the instant Petition).  Exh. 8 at 2.
After directing a response from the State, the post-conviction
court denied Herrera's Rule 3.850 motion.  Exhs. 9-11.  Herrera
appealed the post-conviction court's order of denial.  Exh. 12. On
March 7, 2007, the appellate court *per curiam* affirmed the order of
dismissal.  Herrera v. State, 955 So. 2d 575 (Fla. 2d DCA 2006);
Exh. 13.  Mandate issued on May 22, 2007.  Exh. 14.

## III.  Applicable Law

Petitioner filed his timely[7] Petition on July 24, 2007, after
the effective date of the Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).
Thus, post-AEDPA law governs this action.  Abdul-Kabir v.
Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532
U.S. 782, 792 (2001).  Under AEDPA, the standard of review is
greatly circumscribed and highly deferential to the state courts.
Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir.
2007)(citation omitted).  AEDPA altered the federal court's role in
reviewing state prisoner applications in order to "prevent federal

---

[6]See footnote 5, *infra*.

[7]Although not addressed by Respondent, the Court finds that,
due to tolling from Petitioner's collateral post-conviction
motions, the Petition is timely filed.

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

### A.   Deference to State Decision

Here, Petitioner presented both of his grounds for relief to the State court, which denied the claims on the merits.  Thus, the Court must afford a high level of deference to the State court's decision.  See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing

legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly

identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review de novo; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the

evidence presented, for the state court to credit the testimony of the witness in question. <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted).

"Summary adjudications, as a rule, do not have explicit factual findings to which a court can easily defer." <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1272 (11th Cir. 2008). However, a state court's "dispositive ruling may contain implicit findings, which though unstated, are necessary to that ruling." <u>Id.</u> (citations omitted). Additionally, "state court findings of fact can be inferred from its opinion and the record." <u>Id.</u> "Although state court findings of fact can be inferred from its opinion and the record . . . they cannot be imagined from thin air." <u>Cave v. Singletary</u>, 971 F.2d 1513, 1516 (11th Cir. 1992).

## B. Ineffective Assistance of Counsel Claims

Both of Petitioner's grounds for relief allege ineffectiveness of counsel. Ineffective assistance of counsel claims are reviewed

under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184.

In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby v. Van Hook</u>, 558 U.S. ___ , 130 S. Ct. 13, 16 (2009).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby</u>, 130 S. Ct. at 17 (internal

quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

The Strickland standard "applies whether [a court is]

examining the performance of counsel at the trial or appellate level." Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)).  To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687.  "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Eagle, 279 F.3d at 940 (quoting Strickland, 466 U.S. at 691).  "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" Id. (quoting Strickland, 466 U.S. at 689).  The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. Chateloin v. Singletary, 89 F.3d 749, 753 (11th Cir. 1996); see also Jones v. United States, 224 F.3d 1251, 1257-58 (11th Cir. 2000) (noting that counsel's "failure to divine" a change in unsettled law did not constitute ineffective assistance of appellate counsel)(quoting Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir. 1983)).

To determine whether Petitioner was prejudiced by his

appellate attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

## IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

At trial, the State proffered the tape recording of the 911 telephone call placed by the victim, Wanda Santiago. Exh. 15, Vol. III at 110. A review of the challenged testimony from the 911

12

telephone call placed by the victim reveals the following exchange

between the victim and Ms. Canady, the 911 operator:

> 911 OPERATOR: 911, this is Officer Canady, what is your problem?
>
> MS. SANTIAGO: I've been hit.
>
> MS. CANADY: You're what?
>
> MS. SANTIAGO: My boyfriend beat me up.
>
> MS. CANADY: Where is the address at?
>
> MS. SANTIAGO: 601 West Delaware, Apartment Six.
>
> MS. CANADY: Apartment what?
>
> MS. SANTIAGO: D.
>
> MS. CANADY: And your boyfriend beat you up?
>
> MS. SANTIAGO: Yeah.
>
> MS. CANADY: Okay. Is he still there?
>
> MS. SANTIAGO: No, he's around. I'm at a friend's house.
>
> MS. CANADY: Okay. Where are you hurt at?
>
> MS. SANTIAGO: All over.
>
> MS. CANADY: What is your name?
>
> MS. SANTIAGO: Wanda.
>
> MS. CANADY: What's the phone number you are at, Wanda?
>
> MS. SANTIAGO: 986-0014.

MS. CANADY: Okay. What is your boyfriend's name?

MS. SANTIAGO: Rafael Herrera.

MS. CANADY: Okay. How old is he?

MS. SANTIAGO: Twenty-six.

MS. CANADY: Is he a Hispanic male?

MS. SANTIAGO: Yeah.

MS. CANADY: Okay. Where is he at now?

MS. SANTIAGO: He's over in D-5.

MS. CANADY: In D, like dog?

MS. SANTIAGO: Yeah.

MS. CANADY: Okay. What's his date of birth, do you know?

MS. SANTIAGO: Um, September 14th. I don't know the date - I mean, I don't know the year.

MS. CANADY: Okay. And is there somebody with you there now, Wanda?

MS. SANTIAGO: Yeah, friends. He was sleeping but he wouldn't let me out of the room.

MS. CANADY: How old are you?

MS. SANTIAGO: I am 19.

MS. CANADY: Okay. What did he hurt you with?

MS. SANTIAGO: He kicked me in my face with

his boot.

　　MS. CANADY: Okay. Does he have any weapons

　　there at the house?

　　MS. SANTIAGO: No.

　　MS. CANADY: Has he been drinking or doing

　　drugs?

　　MS. SANTIAGO: I think he's been drinking.

　　MS. CANADY: Okay.  All right.  We're going to

　　get somebody out there, okay?  Just stay in

　　the apartment, keep the door locked and don't

　　let him in if he comes over, okay?

　　MS. SANTIAGO: Okay.

　　MS. CANADY: All right.  Okay.  Bye.

Id. at 110-113.

　　Deputy Doll succeeded Ms. Canady on the stand.  Deputy Doll explained that he was assigned to road patrol and was dispatched to an apartment complex to make contact with the victim.  Id. at 116. Deputy Doll testified that it took him "about three minutes" to arrive at the apartment after he received the call.  Id.  When he arrived he observed Ms. Santiago "crying and . . . bleeding from a cut on her left eyebrow."  Id. at 117.  He stated that "[s]he was really upset, crying . . . she had a cut over her left brow.  She had some fingerprints on her inner arms . . . ."  Id.  In response to the Deputy Doll's questions as to "what had happened," Ms.

15

Santiago said that she had gotten into an argument about money with her boyfriend and "it turned physical when he started hitting her." Id. at 118. Deputy Doll asked Ms. Santiago with what she was hit, and Ms. Santiago said with "fists." Id. Deputy Doll testified that he could see a "shoe print on the side of [Ms. Santiago's] face." When he asked Ms. Santiago how she sustained certain injuries to her face, Ms. Santiago stated "her boyfriend, Rafael, was kicking her" when she fell on the ground. Id. Deputy Doll testified that he took pictures of the victim's injuries the night of the incident, which were introduced into evidence. Id. at 120-23. Finally, Deputy Doll stated that the victim told him she was pregnant. Id. at 123.

Dr. Val Klein-Richey, who was called by the State, testified on direct examination that she was the emergency room physician who treated the victim the night of the incident. Id. at 147. The victim presented "with trauma; um, domestic assault, lacerations, abrasions, and abdominal pain and head pain." Id. The doctor testified in detail about the extent of the victim's injuries and concluded that the injuries were consistent with domestic violence abuse. Id. at 151. During the course of assessing the victim, Dr. Klein-Richey ascertained that the victim was pregnant and referred the victim to "labor and delivery for monitoring - - for fetal monitoring." Id. at 150-153.

**Ground 1: Trial counsel was ineffective in not contesting non-confrontational hearsay testimony**

16

Petitioner faults counsel for failing to object to the 911 tape of the telephone call that was placed by the victim immediately after the incident, the victim's statements to Deputy Doll the night of the incident, and the victim's statements on the night of the incident to Dr. Richey-Klein, the emergency room physician. Petition at 5-12.[8] After a response by the State, the post-conviction court summarily denied this claim finding as follows:

> 2.   In the remaining grounds of his motion, Defendant alleges that his trial counsel was ineffective. According to Strickland v. Washington, a claim of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. 466 U.S. 668 (1984). Furthermore, with "regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669.

> .   .   .

> 6.   As pertains to Ground Three, Defendant asserts that his trial counsel was ineffective for failing "to object to the State's use of nonconfrontational testimonial hearsay evidence." Defendant further asserts that

---

[8]Petitioner also asserts that the victim refused to cooperate with the State in its prosecution of Petitioner, and the prosecution did not prove the victim was unavailable. Id. at 5. To the extent that Petitioner is now asserting that the prosecution failed to prove the victim was not available, this claim is unexhausted and procedurally barred because Petitioner did not raise this claim in his Rule 3.850 motion, or otherwise below. Thus, Ground One of the Petition is deemed exhausted only to the extent that Petitioner raised this ground in his Rule 3.850 motion and the appeal from the denial thereof. Exhs. 8, 12.

counsel "did not vigorously advocate [Defendant's] Sixth Amendment right to confront the witnesses against him."

7.   To the extent that Defendant is asserting that counsel failed to make any objection, the record conclusively refutes Defendant's claim.  A hearing was held on February 4, 2003, regarding the admissibility of the 911 tape, the victim's statements to Deputy Alex Doll and the victim's statements to Dr. Val Richey-Klein.  At the end of the hearing, the trial court ruled that all of the statements were admissible under exceptions to the hearsay rule.  A copy of the transcript of the hearing is attached hereto as Attachment "D."  Therefore, Defendant has failed to demonstrate an entitlement to relief.

8.   To the extent that Defendant is asserting that counsel should have prevailed at the hearing, Defendant's claim is essentially one of trial court error. "Allegations of ineffective assistance cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal." Medina v. State, 573 So. 2d 293, 295 (Fla. 1990).  Therefore, Defendant's claim is procedurally barred.

9.   To the extent that Defendant raises a cognizable claim of ineffective assistance of counsel on the basis that counsel's performance was deficient at the hearing, Defendant has failed to demonstrate an entitlement to relief.   The record reflects that the trial court admitted the 911 tape and the victim's statements to Deputy Alex Doll under the excited utterance exception to the hearsay rule.  The trial court admitted the victim's statements to Dr. Val Richey-Klein under the statements made to obtain a medical diagnosis exception.  Hearsay admitted pursuant to a "firmly rooted" hearsay objection does not violate the Confrontation Clause.  Conner v. State, 748 So. 2d 950, 956 (Fla. 1999).  Both excited utterances and statements made to obtain a medical diagnosis are firmly rooted exceptions. Id.  It appears that Defendant may be attempting to assert that counsel's performance was deficient for failing to be familiar with Crawford v. Washington, 541 U.S. 36 (2004), and failing to argue that the hearsay was inadmissible under Crawford.   However, Defendant's trial took place on February 5, 2003, and the United States Supreme Court did not decide Crawford until March 8, 2004.  Therefore, even if Crawford applies to Defendant's case, which it is not abundantly clear that it does, counsel cannot be deemed

ineffective for "failing to anticipate changes in the law." <u>Walton v. State</u>, 847 So. 2d 438,445 (Fla. 2003). Therefore, Defendant has failed to demonstrate an entitlement to relief.

Exh. 11.

The post-conviction court evaluated Petitioner's claim under the <u>Strickland</u> governing standard. Therefore, the proper standard for ineffective assistance of counsel was applied. The State court also determined that no evidentiary hearing was necessary because the record conclusively refuted Petitioner's claims. This is consistent with federal law, which also holds an evidentiary hearing is unnecessary if the record refutes a petitioner's claims. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007)("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

A review of the record also establishes that the State court's decision was neither an unreasonable application of <u>Strickland</u>, nor an unreasonable determination of the facts. On February 4, 2003, the trial court held a hearing to determine the admissibility of the 911 tape, the victim's statements to Deputy Doll, and the victim's statements to Dr. Richey-Klein. A copy of the February 4, 2003 hearing transcript is attached as exhibit "D" to the pos-conviction court's summary denial of Petitioner's Rule 3.850 motion. Exh. 11 at 209-246. The transcript demonstrates that trial counsel opposed the introduction of the 911 tape and the

victim's testimony.  Id. at 242-243.  Nonetheless, after listening to the 911 tape, hearing testimony from the 911 operator who received the call from the victim, hearing testimony from Deputy Doll who observed the victim within five minutes of the incident and took pictures of the victim's injuries, and considering applicable State law, the trial court allowed the use of the 911 tape and Deputy Doll's testimony under the excited utterance exceptions to the State's hearsay rule.  Id. at 243-244.  The court, however, limited Dr. Richey-Klein's testimony to medical treatment, disallowing any testimony from the victim regarding identification.  Id.

Counsel can not be deemed ineffective due to his inability to persuade the trial court on these evidentiary issues.  Nor can counsel be deemed ineffective for failing to anticipate changes in law.  Stickland, 466 U.S. at 689 (stating that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); see also LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1261, n. 27 (11th Cir. 2005).  Ohio v. Roberts, 448 U.S. 56 (1980) was the law of the land at the time, and was not overruled until after the trial in this case.  Crawford v. Washington, 541 U.S. 36 (2004), as recognized in Davis v. Washington, 547 U.S. 813 (2006).  Because

the Court finds that Petitioner cannot prevail on the deficiency of performance prong, the Court need not address Strickland's prejudice prong. Strickland, 466 U.S. at 697. Consequently, the Court denies Ground 1 of the Petition as without merit.

**Ground 2.     Whether appellate counsel was ineffective for not raising the Crawford v. Washington issue**

Petitioner points out that during the direct appeal of his conviction, the United State Supreme Court decided Crawford v. Washington, 541 U.S. 36 (2004), overruling Ohio v. Roberts, 448 U.S. 56 (1980). Petitioner faults appellate counsel for failing to raise Crawford on appeal to contest the State court's rulings regarding the admissibility of "the 911 tape, Deputy Doll's testimony" because the victim did not testify at a pre-trial deposition or at trial. Petition at 14.

Petitioner raised the Crawford issue in his State petition for writ of habeas corpus. Exh. 5. Therein, Petitioner argued that appellate counsel was ineffective for failing to raise on direct appeal that the trial court improperly allowed "testimonial hearsay evidence to be admitted during trial that was the sole evidence that led to Petitioner's conviction." Id. at 6. Petitioner asserted that "the testimonial hearsay evidence of the 911 audio tape, the 911 Operator's hearsay recitation of the 911 audio tape, and Deputy Sheriff Doll's hearsay recitation of the statements made to him [by] the alleged victim/declarant, Wanda Santiago" were

improperly permitted into evidence at trial, Id. at 9, and that this "testimonial hearsay evidence" was the "sole evidence presented at trial to convict the Petitioner," in violation of Petitioner's right to confront witnesses against him. Id. at 11.

The State filed a response to Petitioner's State petition. Exh. 6. The State directed the appellate court to Strickland as the standard that governed Petitioner's ineffective assistance of appellate counsel claim. Id. at 3. The State objected to Petitioner's characterization of the 911 call or the victim's statements made to Deputy Doll as "testimonial" evidence. In particular, the State, reviewing post-Crawford case law, argued that statements made to 911 operators and to first responders are not subject to Crawford because these types of statements do not rise to the level of an interrogation, but rather are rendered to obtain assistance. See generally Exh. 6. The State contended that the victim in the instant petition, similar to the victims in the cases cited by the State, had placed a telephone call to 911 to obtain assistance after having been beaten up by her boyfriend. Id. at 13-14. Deputy Doll, who was dispatched to the scene, interviewed the victim upon his arrival to ascertain the extent and cause of her injuries to determine whether the victim required medical assistance. The State noted that Deputy Doll eventually obtained a sworn statement from the victim, but the State did not seek to introduce the victim's sworn statement. Id. at 14-15. In

the alternative, the State submitted that, even if Deputy Doll's testimony regarding the victim's statements were deemed testimonial and precluded by <u>Crawford</u>, his statements were cumulative to the statements the victim gave during her 911 call.  <u>Id.</u> at 15-16. Thus, any error in admitting those statements would have been harmless beyond a reasonable doubt.  <u>Id.</u> at 16.

The State appellate court denied Herrea's petition alleging ineffective assistance of appellate counsel without opinion.  Exh. 7.  This decision by the appellate court is entitled to deference under AEDPA, despite the State court failing to provide an explicit explanation for the reasoning behind the court's decision.  <u>Wright</u>, 278 F.2d 1254-55.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974)(citation and quotations omitted).  In <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54, 59 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination."

The <u>Crawford</u> Court drew a distinction between testimonial and non-testimonial hearsay, finding that only "testimonial" statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. <u>Id.</u> at 51. <u>See also</u> <u>United States v. Cantellano</u>, 430 F.3d 1142, 1145 (11th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1034 (March 20, 2006)(noting that non-testimonial evidence "is not subject to confrontation"). The <u>Crawford</u> Court provided guidance as what type of statements constitute "'testimonial' statements": (1) "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." <u>Crawford</u> at 51-52 (citations and quotations omitted).

In <u>Davis v. Washington</u>, 547 U.S. 813 (2006), a case addressing the admissibility of statements in response to a 911 operator's questions, the Court further clarified that statements are non-testimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of

the interrogation is to enable police assistance to meet an ongoing emergency," and that they are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822. If statements are non-testimonial, the statements are still subject to traditional limitations upon hearsay evidence, but are not subject to the Confrontation Clause. Id. at 822-25; Crawford, 541 U.S. at 51.

Here, it is clear that the victim's statements to the 911 operator and the victim's on-scene statement to Deputy Doll were "to enable police assistance to meet an ongoing emergency," and thus the statements do not qualify as testimonial evidence. Davis, 547 U.S. at 822. Unlike Crawford, the victim made the statements to the 911 operator to summon police help and to Deputy Doll immediately after the attack while she was still under a state of extreme emotional stress and prior to her obtaining any medical assistance. The victim made her statements while she was at the apartment complex and prior to her being taken to the hospital for medical treatment.

Even assuming that appellate counsel was "arguably deficient" for failing to raise the Crawford issue concerning certain of the victim's statements to Deputy Doll, Petitioner was not prejudiced by appellate counsel's oversight. Confrontation Clause violations,

including the denial of face-to-face confrontation, are subject to harmless-error analysis. Coy v. Iowa, 487 U.S. 1012, 1021 (1988); Mason v. Allen, 605 F.3d 1114, 1123 (11th Cir. 2010). In habeas proceedings, an error is harmless when the court finds that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 622 (1993)(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the [conviction or] sentence." Mason, 605 F.3d at 1123 (internal citation and quotation omitted). In Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), the Supreme Court set forth several factors relevant to a determination of whether a Confrontation Clause violation is harmless: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and, (5) the overall strength of the prosecution's case. Id.

Here, as pointed out by the State in its brief in response to Petitioner's State petition, the majority of the testimony by Deputy Doll would have been admissible because it was based upon his personal observations. The isolated statements made by the victim to Deputy Doll as to the identity of the Petitioner, to the

26

extent deemed testimonial, were cumulative of the victim's statements made to the 911 operator. Further, the fact that the victim was pregnant was established by the testimony of Dr. Richey-Klein, the emergency room physician who examined the victim. Exh. 15, Vol. III at 150. Consequently, any error by appellate counsel in failing to raise the Crawford issue as to Deputy Doll's testimony constituted harmless error.

Thus, the Court finds that Petitioner's claim that the State appellate court would have reversed his conviction if appellate counsel had raised the Crawford issue lacks merit. Petitioner fails to meet his burden of demonstrating that the state court unreasonably applied Strickland or unreasonably determined the facts in rejecting his ineffective assistance of appellate counsel claim.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Attorney General for the State of Florida is **DISMISSED** as a named Respondent.

2.    The Petition (Doc. #1) is **DENIED.**

3.    The Clerk of the Court shall enter judgment accordingly, terminate any pending motions, and, close this file.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___9th___ day of July, 2010.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record